## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IRIS GERALDINE CARR AND<br>RONNIE CARLETON CARR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| vs. | ) | |
| | ) | |
| ETHICON, INC., AMERICAN<br>MEDICAL SYSTEMS, INC.;<br>BOSTON SCIENTIFIC, LLC;<br>STEPHANIE H. GORDON, M.D.;<br>THE WOMEN'S CENTER, P.A.;<br>ALLEN ASHLEY FUTRAL, III,<br>M.D.; GEORGIA UROLOGY, P.A.;<br>LIFEPOINT HOSPITALS, INC.;<br>LIFEPOINT HOSPITALS, INC.,<br>D/B/A ROCKDALE MEDICAL<br>CENTER; AND JOHN DOE(S), | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF REMOVAL OF ETHICON, INC.

Without submitting to the jurisdiction of this Court and without waiving any available defenses, including, without limitation, lack of jurisdiction, improper venue, statute of limitations, insufficient process, or insufficient service of process, Defendant Ethicon, Inc., by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, files this Notice of Removal of the above-styled action from the State Court of Fulton County, Georgia, where it is currently

pending, to the United States District Court for the Northern District of Georgia, Atlanta Division. As addressed below, the Court has jurisdiction over this matter because the properly joined parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(a), 1441(b). In support of this removal, Defendant Ethicon, Inc. states as follows:

## INTRODUCTION

1.      Plaintiffs Iris and Ronnie Carr ("Plaintiffs") commenced this action on or about April 11, 2011, by filing a Complaint in the State Court of Fulton County, Georgia against Ethicon, Inc. ("Ethicon"), American Medical Systems, Inc. ("AMS"), Boston Scientific, LLC ("Boston Scientific")[1], Lifepoint Hospitals, Inc., Lifepoint Hospitals, Inc. d/b/a Rockdale Medical Center, Stephanie H. Gordon, M.D. ("Dr. Gordon"), The Women's Center, P.A. ("The Women's Center"), Allen Ashley Futral, III, M.D. ("Dr. Futral"), Georgia Urology, P.A. ("Georgia Urology"), and John Doe(s). The State Court action is Civil Action No. 11EV012382B. Copies of all process, pleadings, and orders in the State Court are attached hereto as "Exhibit A," in accordance with 28 U.S.C. § 1446(a).

---

[1] In their Complaint, Plaintiffs improperly denominated "Boston Scientific Corporation" as "Boston Scientific, LLC." *See* Boston Scientific Corporation's Answer and Affirmative Defenses at ¶ 11 (June 13, 2011) (included in Exhibit A).

2.     The Complaint includes the following factual allegations: Plaintiff Iris Carr underwent on September 17, 2008 an initial surgical procedure to repair a grade 3 cystocele and stress incontinence.  Compl. at ¶ 18.  During this surgery, Dr. Gordon allegedly implanted a Pinnicle™ Pelvic Floor System and a Gynecare TVT Secur™ Tension-Free Support.  *Id.*  Dr. Gordon allegedly attempted on December 15, 2008 to trim portions of the mesh devices previously implanted.  *Id.* at ¶ 20. Mrs. Carr underwent on April 13, 2009 a subsequent surgery for stress urinary incontinence and a grade 3 rectocele and vaginal mesh erosion.  *Id.* at ¶ 21.  During the second surgery, Dr. Futral allegedly implanted a Gynecare Prolift™ Posterior Pelvic Floor Repair System and a SPARC™ Sling System.  *Id.*

3.     Plaintiffs seek compensatory and punitive damages as a result of these alleged procedures and have asserted certain claims against the device manufacturers (Ethicon, Boston Scientific, and AMS) and certain claims for professional malpractice against the implanting physicians (Drs. Gordon and Futral), the physicians' clinics or practices (The Women's Center and Georgia Urology), and a party erroneously alleged by Plaintiffs to be the owner or successor-in-interest of the hospital where one or both of the procedures took place (Lifepoint Hospitals, Inc. and Lifepoint Hospitals, Inc. d/b/a Rockdale Medical Center).  Ethicon denies any liability for Plaintiffs' alleged injuries.

## GROUNDS FOR REMOVAL

4. This action may be removed under 28 U.S.C. §§ 1441(a) and (b) because this Court has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiffs and the properly joined Defendants. None of the properly joined and served out-of-state or foreign defendants is a citizen of the state in which the action is brought, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Additionally, this action may be removed pursuant to 28 U.S.C. § 1441(b) as each one of the in-state defendants and Defendant LifePoint Hospitals, Inc. and Rockdale Hospital, LLC are improper parties to these proceedings.

**A.** **Complete Diversity of Citizenship Exists Between Plaintiffs and the Properly Joined Defendants, and None of the Properly Joined and Served Defendants is a Citizen of Georgia.**

5. Upon information and belief, when Plaintiffs commenced this action, and at all times since, Plaintiffs were and continue to be residents and citizens of the State of Georgia. Compl. at ¶ 1.

6. When Plaintiffs commenced this action, and at all times since, Defendant Ethicon, Inc. was and continues to be a corporation organized and existing under the laws of the State of New Jersey with its principal place of

business in New Jersey.  Therefore Ethicon, Inc. is a citizen of the State of New Jersey for purposes of this Court's diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

7.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, Defendant AMS was and continues to be a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Minnesota.  Therefore AMS is a citizen of the States of Delaware and Minnesota for purposes of this Court's diversity jurisdiction.  Compl. at ¶ 10; 28 U.S.C. § 1332(c)(1).

8.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, Defendant Boston Scientific Corporation, improperly denominated as Boston Scientific, LLC in the Complaint,[2] was and continues to be a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Massachusetts.  Therefore Boston Scientific is a citizen of the States of Delaware and Massachusetts for purposes of this Court's diversity jurisdiction.  Compl. at ¶ 11; 28 U.S.C. § 1332(c)(1).

9.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, Defendant LifePoint Hospitals, Inc. was and continues to be a corporation organized and existing under the laws of the State of Delaware with its

---

[2] *See* Boston Scientific Corporation's Answer and Affirmative Defenses at ¶ 11 (June 13, 2011).

principal place of business in the State of Tennessee.  Therefore LifePoint Hospitals, Inc. is a citizen of the States of Delaware and Tennessee for purposes of this Court's diversity jurisdiction.   Compl. at ¶¶ 6-7; 28 U.S.C. § 1332(c)(1).   As discussed below, however, LifePoint Hospitals, Inc. is a misnamed party, a nominal party, and in addition has been improperly joined in this action.   LifePoint Hospitals, Inc. therefore is not required to consent to this Notice of Removal.  *See Tri–Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325 (5th Cir. 1970) (consent of nominal party not required for Notice of Removal); *Williams v. Atlantic Coast Line Railroad Co.,*  294 F. Supp. 815, 816 (S.D. Ga. 1968) (consent of misnamed party – same).

10.    Upon information and belief, when Plaintiffs commenced this action, and at all times since, Defendant LifePoint Hospitals, Inc. d/b/a Rockdale Medical Center did not exist as a business entity or otherwise, and it is a fictitious entity. Defendant LifePoint Hospitals, Inc. d/b/a Rockdale Medical Center therefore is not a properly joined and served defendant.   Accordingly, consent to this Notice of Removal by the fictitious entity LifePoint Hospitals, Inc. d/b/a Rockdale Medical Center cannot be obtained and is not required for this removal.  *See* Motion of Defendant Lifepoint Hospitals, Inc. to Dismiss filed June 9, 2011 ("LifePoint MTD") (attached as "Exhibit B").

11.    When Plaintiffs commenced this action, Rockdale Hospital, LLC was not and is not now a named party in the Complaint.  Upon information and belief, Rockdale Hospital, LLC is the owner of and does business in the State of Georgia as Rockdale Medical Center, which is located at 1412 Milstead Avenue, Conyers, Georgia 30012.  Rockdale Hospital, LLC has appeared and filed an Answer in the state court proceeding, contending that Plaintiffs' suit must be dismissed as to Rockdale Hospital, LLC because Plaintiffs have failed to submit an affidavit under oath supporting such claims as required by the duly enacted laws of the State of Georgia when filing their Complaint.  *See* Answer of Rockdale Hospital, LLC (June 21, 2011); O.C.G.A. § 9-11-9.1.

12.    Upon information and belief, Rockdale Hospital, LLC is a limited liability company organized under the laws of the State of Delaware that is registered to do business under the laws of the State of Georgia.  Upon information and belief, the only member of Rockdale Hospital, LLC is LifePoint Holdings 2, LLC, which is a limited liability company that is organized under the laws of the State of Delaware and is registered to do business in the State of Tennessee.  Upon information and belief, LifePoint Hospitals Holdings, Inc. is the only member of LifePoint Holdings 2, L.L.C.  LifePoint Hospitals Holdings, Inc. is a corporation organized under the laws of State of Delaware with its principal place of business in

Tennessee, *see Hertz Corp. v. Friend,* 130 S. Ct. 1181 (2010), and is registered to do business in the State of Tennessee.  Thus, the citizenship of Rockdale Hospital, LLC, a limited liability company, for purposes of this Court's diversity jurisdiction under 28 U.S.C. § 1332 is the citizenship of LifePoint Hospital Holdings, Inc.  *See Rolling Greens MPH, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004).  Rockdale Hospital, LLC is therefore a citizen of the States of Delaware and Tennessee for purposes of diversity.  As discussed, however, Rockdale Hospital, LLC is an unnamed, unserved, nominal, and improperly joined party whose consent is not required for removal.  See 28 U.S.C. § 1446(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citizenship of improperly or fraudulently joined party not considered for purposes of determining diversity jurisdiction).

13.    Upon information and belief, when Plaintiffs commenced this action, and at all times since, Dr. Gordon was and is a resident and citizen of the State of Georgia.  Compl. at ¶ 2.  As discussed below, however, Dr. Gordon has been improperly or fraudulently joined in this action.  Dr. Gordon's citizenship should therefore be ignored for purposes of determining whether complete diversity exists. *See Triggs,* 154 F.3d at 1287.

14.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, Dr. Futral was and is a resident and citizen of the State of Georgia.   Compl. at ¶ 4.   As discussed below, however, Dr. Futral has been improperly or fraudulently joined in this action. Dr. Futral's citizenship should therefore be ignored for purposes of determining whether complete diversity exists. *See Triggs*, 154 F.3d at 1287.

15.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, The Women's Center was and continues to be a professional corporation organized and existing under the laws of the State of Georgia with its principal place of business located in Georgia.   Compl. at ¶ 3; 28 U.S.C. § 1332(c)(1).   As discussed below, however, The Women's Center has been improperly or fraudulently joined in this action.   The citizenship of The Women's Center should therefore be ignored for purposes of determining whether complete diversity exists.  *See Triggs*, 154 F.3d at 1287.

16.     Upon information and belief, when Plaintiffs commenced this action, and at all times since, Georgia Urology was and continues to be a professional association organized and existing under the laws of the State of Georgia with its principal place of business located in Georgia.   Compl. at ¶ 5; 28 U.S.C. § 1332(c)(1).  As discussed below, however, Georgia Urology has been improperly or

fraudulently joined in this action.  Georgia Urology's citizenship should therefore be ignored for purposes of determining whether complete diversity exists.  *See Triggs*, 154 F.3d at 1287.

17.    For purposes of removal, the citizenship of the John Doe defendants shall be disregarded.  28 U.S.C. § 1441(a).

**B.    The Georgia Resident Defendants – Dr. Gordon, Dr. Futral, The Women's Center, and Georgia Urology – Have Been Improperly Or Fraudulently Joined: There Is No Reasonable Basis To Predict That Plaintiffs Will Prevail On Their Claims Under Georgia Law Against Any Of These In-State Or Resident Defendants.**

18.    In a removal case alleging improper or fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendants into state court. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).  In this case, removal is proper because the first type of improper or fraudulent joinder is applicable to the claims asserted against the non-diverse Defendants.

19.    In *Catlett v. Wyeth*, 379 F. Supp. 2d 1374 (M.D. Ga. 2004), the court explained that the standard applicable in assessing whether there has been improper or fraudulent joinder is more "accurately described as 'requiring a showing that there is no reasonable basis' for predicting liability on the claims alleged." *Id.* at

1377 (citations omitted).   The *Crowe* court made clear that Plaintiffs must demonstrate that there is a "reasonable basis" upon which this Court can predict that state law might impose liability.  *Crowe*, 113 F.3d at 1541-42.

20.    "[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal[.]"  *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005).

21.    In this case, there is no reasonable basis to predict that Plaintiffs can prevail on their claims against the Georgia Resident Defendants because Plaintiffs have failed to submit an affidavit under oath supporting such claims as required by the duly enacted laws of the State of Georgia when filing their Complaint.  *See* O.C.G.A. § 9-11-9.1.

22.    O.C.G.A. § 9-11-9.1(a) provides as follows:

(a) In any action for damages alleging professional malpractice against:

(1) A professional licensed by the State of Georgia and listed in subsection (g) of this Code section;

(2) A domestic or foreign partnership, corporation, professional corporation, business trust, general partnership, limited partnership, limited liability company, limited liability partnership, association, or any other legal entity alleged to be liable based upon the action or inaction of a professional licensed by the State of Georgia and listed in subsection (g) of this Code section; or

(3) Any licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the

-11-

State of Georgia and listed in subsection (g) of this Code section, ***the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.***

O.C.G.A. § 9-11-9.1(a) (emphasis added).

23.   O.C.G.A. § 9-11-9.1(b) provides a limited exception to the expert affidavit requirement in subsection (a) if:

> the period of limitation will expire or there is a good faith basis to believe it will expire on any claim stated in the complaint within ten days of the date of filing the complaint ***and, because of time constraints, the plaintiff has alleged that an affidavit of an expert could not be prepared***.  In such cases, ***if the attorney for the plaintiff files with the complaint an affidavit in which the attorney swears or affirms that his or her law firm was not retained by the plaintiff more than 90 days prior to the expiration of the period of limitation on the plaintiff's claim or claims***, the plaintiff shall have 45 days after the filing of the complaint to supplement the pleadings with the affidavit.
>                                                                       . . .
>
> If either affidavit is not filed within the periods specified in this Code section, or it is determined that the law firm of the attorney who filed the affidavit permitted in lieu of the contemporaneous filing of an expert affidavit or any attorney who appears on the pleadings was retained by the plaintiff more than 90 days prior to the expiration of the period of limitation, ***the complaint shall be dismissed for failure to state a claim.***

O.C.G.A. § 9-11-9.1(b) (emphasis added).

24.     At all times material to Plaintiffs' Complaint, both Drs. Gordon and Futral were medical doctors licensed by the State of Georgia.[3]  *See* web site of Georgia Composite Medical Board – Dr. Futral (http://services.georgia.gov/ dch/mebs/performSearch.do) (accessed June 4, 2011); Dr. Gordon (http://services. georgia.gov/dch/mebs/searchResultsView.do?licenseNum=&boardType=04&d-4531428-p=4&searchCriteria=searchCriteria&city=&lastName=gordon)   (accessed June 4, 2011).

25.     Plaintiffs' alleged claims against Drs. Gordon and Futral are strictly governed by the affidavit requirements of O.C.G.A. § 9-11-9.1 as they address compliance with the professional standards of conduct and the professional judgment and skill related to the care rendered to Plaintiff Iris Carr.  *E.g., Williams v. Alvista Healthcare Ctr., Inc.*, 283 Ga. App. 613, 615 (Ga. Ct. App. 2007); *Brown v. Tift Health Care, Inc.*, 279 Ga. App. 164, 166 (Ga. Ct. App. 2006); *Holloway v. Northside Hosp.*, 230 Ga. App. 371 at 371-72 (Ga. Ct. App. 1998); *Robinson v. Williamson*, 245 Ga. App. 17, 19, 537 S.E.2d 159, 161 (2000) (quoting *Sparks v. Kroger Co.*, 200 Ga. App. 135, 136, 407 S.E.2d 105, 106 (1991)).  Having failed to comply with O.C.G.A. § 9-11-9.1(b), Plaintiffs cannot recover under either a theory

---

[3] Medical doctors are specifically listed in subsection (g) of O.C.G.A. § 9-11-9.1.

of medical malpractice, lack of informed consent, negligence, negligent distribution,[4] *or* breach of warranty[5] against Drs. Gordon and Futral.

---

[4] For the same reasons that Georgia courts have held that breach of warranty claims against healthcare providers involve professional judgment and skill (*see Robinson*, 245 Ga. App. at 19), Plaintiffs' "negligent distribution" claims against Futral and Gordon likewise concern compliance with professional standards of conduct and professional judgment and skill related to the care rendered to Plaintiff Iris Carr. Accordingly, such claims are strictly governed by the affidavit requirements of O.C.G.A. § 9-11-9.1. In this context, other federal courts have held in medical device products liability cases that healthcare providers are improperly or fraudulently joined where plaintiffs claim that they acquired, re-sold or distributed the device at issue. *See, e.g., Roell v. Stryker*, 3:06-cv-443, 2007 WL 2783357, * 4 (S.D. Miss., Sept. 24, 2007) (concluding that hospital could not be liable as "seller" of artificial hip under state product liability law and surveying law of other jurisdictions reaching similar conclusions under U.C.C.); *Kavalir v. Medtronic, Inc.*, No. 07-0835, 2007 WL 1225358, *3 (N.D. Ill., April 19, 2007) (holding health care defendants were fraudulently joined "because there is no possibility that Plaintiff could state a cause of action for breach of implied warranty against the Hospital Defendants" based on the general rule that hospitals are not sellers of medical devices). As one federal court of appeals has explained, "[i]t is hornbook law that a health-care provider cannot be held strictly liable for a latent defect in a medical device manufactured by a third party." *Rolon-Alvarado v. San Juan*, 1 F.3d 74, 79 & n.5 (1st Cir. 1993). Nothing under Georgia law would suggest that the rationale employed by these Courts would not apply herein.

[5] There is no reasonable basis for concluding that Plaintiffs might prevail on their claims for breach of express warranty or breach of implied warranty against any of the Georgia resident defendants because Plaintiffs' Complaint contains no allegations of privity between these defendants and the Plaintiffs as ultimate purchasers. *See Gowen v. Cady*, 189 Ga. App. 473, 476, 376 S.E.2d 390, 393 (1988) (recognizing privity as a requirement to recover for breach of express or implied warranty); *In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation*, 711 F. Supp. 2d 1348, 1366 (M.D. Ga. 2010) (no privity between patients implanted with medical device designed to treat stress urinary

26.    At all times material to Plaintiffs' Complaint, The Women's Center and Georgia Urology were entities alleged to be liable due to the actions or inactions of professionals licensed by the State of Georgia and listed in subsection (g) of O.C.G.A. § 9-11-9.1.

27.    Accordingly, all of Plaintiffs' claims against The Women's Center and Georgia Urology are strictly governed by the affidavit requirements of O.C.G.A. § 9-11-9.1 as they concern the compliance of Drs. Gordon and Futral with the professional standards of conduct and their professional judgment and skill.

28.    Thus, O.C.G.A. § 9-11-9.1 requires that before the courts of Georgia shall review the professional malpractice claims asserted in this case against the Georgia Resident Defendants, Plaintiffs must have either: (a) attached a medical expert's affidavit to the complaint; *see* O.C.G.A. § 9-11-9.1(a) (1)-(3); or, in the alternative, (b) attached an attorney's affidavit affirming that counsel was not retained more than 90 days before the expiration of the statute of limitations period and that a medical expert affidavit could not be prepared "because of time constraints." *See* O.C.G.A. § 9-11-9.1(b).

---

incontinence (SUI) and manufacturer-seller where medical device was not sold directly to patients).

29.    Here, Plaintiffs filed their Complaint on April 11, 2011, but they did not file a medical expert affidavit under O.C.G.A. § 9-11-9.1(a), or an attorney affidavit under O.C.G.A. § 9-11-9.1(b).

30.    Georgia law is clear that the affidavit requirement is an essential element of the proof to be included with a complaint for professional malpractice against a treating physician and any alleged providers of such service:

> A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer, authorized to administer oaths that it was sworn to and subscribed before him, is a lawful affidavit. . . . To make a valid affidavit, the affiant must swear to it, and the fact of his swearing must be certified by proper officer. In order to make an affidavit there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath.

*Tenet Healthcare Corp. v. Gilbert*, 277 Ga. App. 895, 897 (Ga. Ct. App. 2006) (citing *Harvey v. Kidney Center of Central Ga.,* 213 Ga. App. 319, 320 (Ga. Ct. App. 1994)).

31.    Here, the "report" attached to their Complaint does not purport to be an affidavit, is not a sworn statement, and was not signed before a notary.  As such, it is clear that the attachment is not a legally valid affidavit.

32.    Because no valid affidavit was attached to Plaintiffs' Complaint, it cannot be "cured" pursuant to O.C.G.A. § 9-11-9.1(e).  "To be an amendable affidavit when filed with the complaint under O.C.G.A. § 9-11-9.1(e), the affidavit

must have been sworn to before a notary public, even if it is otherwise defective; otherwise, it does not constitute a valid affidavit." *Sood v. Smeigh*, 259 Ga. App. 490, 492 (Ga. Ct. App. 2003) (citing *Sambor v. Kelley*, 271 Ga. 133, 134 (1999) (an affidavit not sworn to before a notary public is invalid)). *See Harvey v. Kidney Center of Cent. Georgia, Inc.*, 213 Ga. App. 319, 319 (Ga. Ct. App. 1994) (failure to comply with O.C.G.A. § 9-11-9.1 is only an "amendable defect" under Rule 15(a) of the Civil Practice Act if the "legal validity of the document as an affidavit [is] not in question").[6]

33.   The Georgia General Assembly has determined not only that a certain type or quantum of proof is essential to filing a claim for medical malpractice under Georgia Law, *i.e.,* a valid expert affidavit containing certain particularized allegations, but also that any party bringing such a claim must include the sworn expert affidavit in a specific format at a specific time in order to state a claim for professional medical malpractice under Georgia law.

---

[6] *See Goodin v. Gwinnett Health System, Inc.,* 273 Ga. App. 461, 461-62 (Ga. Ct. App. 2005) (holding that an "affidavit" that did not include an executed jurat was insufficient to satisfy O.C.G.A. § 9-11-9.1); *Schmidt v. Feldman*, 230 Ga. App. 500 (Ga. App. Ct. 1998) (an affidavit cannot be sworn to by long distance telephone but must be sworn to in the physical presence of the notary public); *Lee v. CSX Transp., Inc.,* 233 Ga. App. 30 (Ga. Ct. Ap. 1998) (holding that an "affidavit that did not include an executed jurat was insufficient to satisfy O.C.G.A. § 9-11-9.1).

34.    As such, the expert affidavit is an essential component or a mandatory prerequisite to alleging a professional medical malpractice claim under Georgia law, a crucial and essential element of proof that must be presented and included when filing one's complaint.   Thus, the failure of Plaintiffs to present the requisite affidavit in the case *sub judice* is fatal to Plaintiffs' claims against the medical malpractice defendants.

35.    Respect for Georgia law duly adopted by the Georgia General Assembly and for its uniform application and enforcement, requires that the Federal courts of Georgia enforce the forgoing provisions of O.C.G.A. § 9-11-9.1 on removal in the same manner as the State courts of Georgia unless the statutory affidavit requirement is in "direct conflict" with the Federal Rules of Civil Procedure.   *Compare Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) (federal court sitting in diversity must apply substantive state law of the forum state), *with Hanna v. Plumer*, 380 U.S. 460 (1965) (when determining when to apply state law, rather than Federal Rules of Civil Procedure, federal court sitting in diversity applies "outcome-determinative" test so that results in federal court are consistent with those obtained under state law in state court).   When making the determination whether O.C.G.A. § 9-11-9.1 is in "direct conflict" with the Federal Rules of Civil Procedure, "courts are to heed the outcome-determination approach [of *Hanna*]

-18-

while also relying on the policies underlying the *Erie* rule: 'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1541 (10th Cir. 1996) (quoting *Hanna,* 380 U.S. at 468).

36.    In *Maddox v. Ga. Dep't of Human Servs. Div. of Family & Children Servs.*, 2010 U.S. Dist. LEXIS 122804 (N.D. Ga., Nov. 19, 2010), this Federal district court recently addressed whether the expert affidavit requirement in O.C.G.A. § 9-11-9.1 applied in medical malpractice cases removed from Georgia state court to federal court.  The district court noted that under Federal Rule Civil Procedure 81(c), the Federal Rules of Civil Procedure "only 'apply to a civil action after it is removed from a state court.'"  2010 U.S. Dist. LEXIS 122804, at *9 n. 1 (quoting Fed. R. Civ. P. 81(c)).  The *Maddox* court noted that "[a]lthough the case was later removed, state law governs the pleading requirements with respect to the Complaint," *id.,* and it held that the expert affidavit requirement applied to the proceedings.

37.    Another decision of this Court, *Robinson v. Correctional Medical Associates, Inc.,* 2010 WL 2499994 (N.D. Ga., June 15, 2010), issued before *Maddox, supra,* interprets O.C.G.A. § 9-11-9.1 as being in conflict with Federal

Rule Civil Procedure 8, citing *Hanna v. Plumer*, 380 U.S. 460 (1965).  As shown

below, *Robinson* is inapposite and non-controlling for several reasons.

38.    First, unlike *Robinson*, the issue before this Court is the improper or

fraudulent joinder of non-diverse defendants.  Fraudulent joinder analysis considers

whether there is any reasonable basis upon which to predict that Plaintiffs might

prevail against the resident defendants in State court under Georgia law.  If Plaintiffs

cannot prevail against the resident defendants in State court, the case is properly

removable on the basis of diversity of citizenship.   Consequently, *Robinson*'s

analysis of Federal Rule 8 has no application here.  *See Maddox*, 2010 U.S. Dist.

LEXIS 122804, *9, n. 1.

39.    Moreover, *Robinson,* respectfully, erroneously concludes that Federal

Rule 8 is inconsistent with O.C.G.A. § 9-11-9.1.  In finding that Federal Rule 8 is

"inconsistent" rather than simply being silent on the subject of affidavits that form a

part of the pleadings, *Robinson* fails to consider other applicable Federal rules

governing pleadings, including Rule 11(a) of the Federal Rules of Civil Procedure.

Federal Rule 11(a) provides in pertinent part:  "Unless a rule or statute specifically

states otherwise, a pleading need not be verified or accompanied by an affidavit."

Thus, when read together, the plain language of Federal Rules 8 and 11(a) requires

that the Federal district courts uphold and enforce rather than disregard the sworn

expert affidavit requirement.  Simply put, no direct conflict exists between O.C.G.A. § 9-11-9.1 and Federal Rules 8, 9 or 11.

40.    To this end, in addition to the *Maddox* court, at least two Federal appellate courts and numerous other Federal district courts have concluded that there is no direct conflict between the Federal Rules of Civil Procedure and the state statutory requirement of including an expert affidavit with the complaint, and therefore the "outcome – determinative" test of *Hanna* requires that the federal courts honor and enforce the state statute.   *E.g., Trierweiler,* 90 F.3d at 1541; *followed, Hill v. SmithKline Beecham Corp.,* 393 F.3d 1111, 1117 (10th Cir. 2004) (Colorado's statutory certificate of review requirement applies to state law professional negligence claims brought in federal court under the Federal Tort Claims Act); *accord, Chamberlain v. Giampapa,* 210 F.3d 154, 159-61 (3d Cir. 2000) (under *Hanna*'s "outcome-determinative" test, New Jersey statute requiring medical-malpractice plaintiffs to file an affidavit of merit within 60 days of filing a complaint does not "directly collide" with Federal Rules 8 & 9 and thus applies in diversity actions; collecting similar cases and refusing to follow *Boone v. Knight*, 131 F.R.D. 609 (S.D. Ga. 1990), which had concluded *sua sponte* that O.C.G.A. § 9-11-9.1 was inconsistent with Federal Rule 8); *Williams v. United States*, 754 F. Supp. 2d 942, 952-53 (W.D. Tenn. 2010) (Tennessee Medical Malpractice Act's

good faith certificate requirements applied to veteran's action filed under the Federal Tort Claims Act) (collecting cases from other jurisdictions enforcing similar State statutory medical malpractice certification/affidavit requirements); *accord*, *Bierbauer v. Manenti*, 2010 WL 408835, *10 (N.D. Ohio, Oct. 12, 2010) (enforcing Ohio medical malpractice statutory affidavit requirement).

41. As a review of the foregoing well-reasoned authorities show, *Robinson* does not appear to have considered or fully analyzed controlling precedent of the United States Supreme Court that examines the proper interrelationship between state statutes such as O.C.G.A. § 9-11-9.1 and the Federal Rules of Civil Procedure. *See Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949), and *Walker v. Armco Steel Corp.,* 446 U.S. 740 (1980).

42. *Robinson* initially invokes the policies militating in favor of applying the Federal Rules of Civil Procedure in diversity cases as expressed in *Hanna v. Plumer*, 380 U.S. 460 (1965), versus those in favor of the enforcement of state law as expressed in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). However, *Robinson* does not appear to have considered how the United State Supreme Court applied the *Erie* doctrine and the policies underpinning *Hanna* to the applicable state statutes at issue in *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530 (1949), or fully analyzed its effect in *Walker v. Armco Steel Corp.,* 446 U.S. 740 (1980). The

holdings of *Ragan* and *Walker*, as discussed in more detail below, support Defendants' arguments herein and their removal of this case.

43.   As already seen, there is no direct conflict between O.C.G.A. § 9-11-9.1 and Federal Rule 8. Indeed, Federal Rule 11(a) expressly recognizes that statutes such as O.C.G.A. § 9-11-9.1 have been adopted and are to be enforced. "Since there is no direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply." *Walker,* 446 U.S. at 752.

44.   "Instead, the policies behind *Erie* and *Ragan* control the issue whether, in the absence of a federal rule directly on point, state [law] requirements which are an integral part of the state statute [governing medical malpractice claims] should control in an action based on state law" and is before the federal court based upon diversity jurisdiction. *Walker,* 446 U.S. at 752-53.

45.   *Ragan* involved the interplay of two Kansas state statutes – a two-year statute of limitations and a statute requiring service of the summons within 60 days. *See Ragan*, 337 U.S. at 530-32.   The defendant "moved for summary judgment on the ground that the Kansas statute of limitations barred the action since service had not been made within either the 2-year period or the 60-day period." *Walker*, 446 U.S. at 746 (discussing *Ragan*).   However, the district court denied the motion and "held that the statute had been tolled by the filing of the complaint" and that Federal

Rule 3 governed.  *Id.*  "The Court of Appeals reversed because 'the requirement of service of summons within the statutory period was an integral part of that state's statute of limitations.'"  *Id.* (citing *Ragan*, 337 U.S. at 532).

46.    The Supreme Court affirmed, holding "[w]e cannot give [the cause of action] longer life in the federal court than it would have had in the state court without adding something to the cause of action.  We may not do that consistently with *Erie*. . . ."  *Ragan*, 337 U.S. at 533-34.  The Supreme Court also agreed with the Court of Appeals' holding that the service of summons statute was "an integral part" of the state statute of limitations.  *Id.* at 534.

47.    Similarly, *Walker* involved an Oklahoma statute "requiring service of process to toll the statute of limitations."  *Walker*, 446 U.S. at 748.  The Supreme Court found the circumstances to be "indistinguishable" from *Ragan*.    *Id.* Specifically, because there was no "direct conflict" between the Oklahoma statute and Federal Rule of Civil Procedure 3, the *Hanna* analysis did not apply.  *Walker,* 446 U.S. at 752.  As in *Ragan*, the *Walker* court found that the service requirement was "an integral part" of the state statute of limitations.  *Walker,* 446 U.S. at 751-52.

48.    The *Walker* court went on to state:  "There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations

should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.   The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it." *Walker,* 446 U.S. at 753.

49.   The analyses in *Ragan* and *Walker* are even more compelling here, where diversity jurisdiction is based on fraudulent joinder of resident defendants, claims against whom these Plaintiffs cannot proceed in State court because of their failure to file an expert affidavit, which is an integral part of the law governing medical malpractice claims.   To conclude otherwise, and to refuse to apply the state law expert affidavit requirement would result in the "inequitable administration of the law." *Walker,* 446 U.S. at 753 (quoting *Hanna*, 380 U.S. at 468).

50.   Finally, *Robinson* misapprehends the *Erie*-specific "substance vs. procedure" dichotomy.   "Except at the extremes, the terms 'substance' and 'procedure' precisely describe very little except a dichotomy, and what they mean in a particular context is largely determined by the purposes for which the dichotomy is drawn.   In the context of our Erie jurisprudence, see *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that purpose is to establish (within the limits of applicable federal law, including the prescribed Rules of Federal

Procedure) substantial uniformity of predictable outcome between cases tried in a federal court and cases tried in the courts of the State in which the federal court sits." *Sun Oil Co. v. Wortman,* 486 U.S. 717, 726-727 (1988).

51.    In *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945), the United States Supreme Court explained the rationale underlying the *Erie*-specific "substance vs. procedure" analysis.   This analysis reveals the flaw in *Robinson*, namely, its failure to recognize what is a matter of "substance" for purposes of *Erie*:

> [S]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
>
> And so the question is not whether a statute of limitations is deemed a matter of 'procedure' in some sense. The question is . . . does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?
>
> . . . In essence, the intent of [Erie] was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*Guaranty Trust,* 326 U.S. at 108-10.

52.     Applying the *Guaranty Trust* analysis here demonstrates why the sworn affidavit requirement of O.C.G.A. § 9-11-9.1 is, in fact, "substantive" for *Erie*'s purposes (and "outcome-determinative" for *Hanna*'s purposes).  Disregarding O.C.G.A. § 9-11-9.1 – a statute that would be controlling in an action upon the same claim by the same parties in State court – would significantly affect the result of the litigation and result in the inequitable administration of the laws.  To prevent this from arising, federal courts are required under *Hanna's* "outcome-determinative" test to uphold and enforce O.C.G.A. § 9-11-9.1 since it does not directly conflict with the Federal Rules of Civil Procedure and the failure to enforce the statute would otherwise lead to an outcome in Federal court different from that in State court.

53.     For these reasons, under the plain terms of O.C.G.A. § 9-11-9.1(b) and other applicable Georgia law, Plaintiff Iris Carr fails to state any claims against the Georgia Resident Defendants.  *Roberson v. Northrup*, 302 Ga. App. 405 (Ga. Ct. App. 2010).  Therefore, there is no reasonable basis for concluding that Plaintiff Iris Carr might proceed and prevail on any claims asserted against them in State court.

54.     When the one spouse cannot recover from the alleged tort-feasor as a matter of law, the alleged tort-feasor also is not liable for loss of consortium arising from those alleged injuries.  *Holloway*, 230 Ga. App. at 372 (citing *White v.*

*Hubbard*, 203 Ga. App. 255, 257 (Ga. App. Ct. 1992)).  Because Plaintiff Iris Carr cannot recover against the Georgia Resident Defendants, Plaintiff Ronnie Carr has no claim for the loss of consortium against them.  *Id.*

55.    Accordingly, Plaintiffs' allegations fail to provide any reasonable basis for imposing liability against Dr. Gordon, Dr. Futral, The Women's Center, and Georgia Urology under Georgia law, and their citizenship must be disregarded for jurisdictional purposes.

## C.    The Consent of Neither LifePoint Hospitals, Inc. Nor Rockdale Hospital, LLC Is Required For Removal.

56.    "An exception to [the rule of unanimity] in diversity cases is where a plaintiff sues a 'nominal' or 'formal' or 'improper' party.  Such parties need not join in or consent to the removal."  *Williams v. Atlantic Coast Line Railroad Co.,* 294 F. Supp. 815, 816 (S.D. Ga. 1968).

57.    The seminal case addressing nominal parties and removal is *Tri–Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349,* 427 F.2d 325 (5th Cir. 1970).   As noted in *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Services*, 925 F.2d 866, 871-72 (5th Cir. 1991), a Fifth Circuit case interpreting *Tri-Cities*,

> *Tri–Cities* discusses nominal parties as being those parties who are neither necessary nor indispensable to join in the action. [*Tri–Cities,*

> 427 F.2d] at 327.  The *Tri–Cities* test of whether defendants are
> nominal parties "is whether in the absence of the [nominal defendant],
> the Court can enter a final judgment consistent with equity and good
> conscience which would not be in any way unfair or inequitable to the
> plaintiff."  *Id.* (quoting *Stonybrook Tenants Assoc., Inc. v. Alpert,* 194
> F. Supp. 552, 559 (D. Conn. 1961)).

*Farias*, 925 F.2d at 871-72.[7]  The *Farias* court further explained: "[t]he bottom line

concern in determining a nominal party is whether the plaintiff can establish a cause

of action against the nonremoving defendant in state court."  *Farias*, 925 F.2d at

872.

58.    In this case, the consent of LifePoint Hospitals, Inc. is not required

because Plaintiffs cannot establish any causes of action against LifePoint Hospitals,

Inc. in state court, and this Court can enter a final judgment consistent with equity

and good conscience which would not be in any way unfair or inequitable to

Plaintiffs.

59.    LifePoint Hospitals, Inc. is a holding company whose subsidiaries own

and operate hospitals and other facilities across the United States.[8]  LifePoint

---

[7] *See also Hill v. Clark*, 2011 WL 2174971, *2 (N.D. Ga., June 2, 2011) (citing *Tri-
Cities* test for nominal parties and denying motion to remand); *Pensyl v. Terminix
Int'l Co.,* 2010 WL 1487269, *1 (M.D. Ga., Apr. 12, 2010) (citing *Tri-Cities* test).

[8] *See* 10-12B, Initial General Form for Registration of a Class of Securities etc. of
LifePoint Hospitals, LLC (12/11/1998), attached as Exhibit "C," at Exhibit 2.1
("The health care services businesses conducted by the America and Pacific Groups
will be transferred to LifePoint Hosptials, Inc. and Triad Hospitals, Inc.,

Hospitals, Inc. is not an operating company – it does **not** do business in the State of Georgia or elsewhere as Rockdale Medical Center and it did not distribute the medical devices at issue in this case.[9]   Accordingly, as a mere holding company rather than an operating company, LifePoint Hospitals, Inc. did not engage – and indeed could not have engaged – in the acts and/or omissions alleged by Plaintiffs in their Complaint.  *See* Answer of Rockdale Hospital, LLC ¶¶ 24, 54 & 55 (June 21, 2011) (included in Exhibit A).

---

respectively, ***each of which will be a newly formed Delaware holding company.***" (emphasis added); *id*. at p. 71 ("LifePoint will be organized as a Delaware corporation in 1999 to serve as ***the public holding company*** for the America Group of Columbia/HCA.") (emphasis added).

[9] As discussed above regarding negligent distribution claims asserted against the resident health care providers (*See* FN 4, *supra*), LifePoint Hospitals, Inc. cannot be held liable as a "distributor" of medical devices as a matter of law.  Federal courts have held in medical device products liability cases that a hospital is improperly joined where the factual allegations against the hospital are, as in this case, that it acquired, re-sold or distributed the device at issue.   *See, e.g., Roell*, 2007 WL 2783357 at * 4; *Kavalir*, 2007 WL 1225358 at *3; *Pleasant v. Dow Corning Corp.*, No. 92-3180-17, 1993 WL 1156110, *3 (D.S.C., Jan. 7, 1993) (explaining that courts nationwide have "refused to extend [strict liability] to hospitals that provide products, such as medical devices, in the course of treating a patient," and thus finding hospital to be a "sham defendant" fraudulently joined to defeat diversity) (internal citations omitted); *see also Walker v. Medtronic, Inc.*, No. 03-CV-74, 2003 WL 21517997, *3 (N.D. Miss., June 4, 2003) (finding non-diverse sales representative was fraudulently joined where complaint was "without a factual basis for concluding that [representative] directly, personally, or actively participated in any alleged tortious conduct").  Nothing under Georgia law would suggest that the rationale employed by these Courts would not apply to Plaintiffs' claims asserted against LifePoint.

60.    LifePoint Hospitals, Inc. was not "negligent in permitting its network physicians, residents, interns, staff, associates, and personnel to use" (*see* Compl. at ¶ 37) the allegedly defective products because *it did not employ any such individuals.*    Nor did LifePoint Hospitals, Inc. "negligently provide hospital services" (*id.* at ¶ 38) because it *does not provide any such services*.    Similarly, Lifepoint Hospitals, Inc. did not breach any warranties to Plaintiffs as it *does not provide any such warranties,* and in any event, the Georgia UCC does not apply to service contracts of health care providers such as that alleged herein. *See McCombs v. Southern Regional Medical Center, Inc.,* 233 Ga. App. 676, 677, 504 S.E.2d 747, 749 (1998) (UCC warranty provisions do not apply to hospital's provision of allegedly defective medical plate device).    Additionally,  LifePoint Hospitals, Inc. owes no "direct corporate duty to Plaintiff Iris Carr to use reasonable care in formulating and enforcing policies procedures, rules and bylaws by which its medical staff and personnel were to be governed" (*id.* at ¶ 39) because LifePoint Hospitals, Inc. *has no such medical staff and/or personnel*.    Finally, LifePoint Hospitals, Inc. is not vicariously liable to Plaintiffs because *none* of the "medical care providers involved in the care and treatment of Plaintiff Iris Carr . . . were the agents, servants and/or employees of Lifepoint."  *Id.* at ¶ 40.

-31-

61.   Similarly, consent is not required from Rockdale Hospital, LLC inasmuch as it is not a named party to this action.   Furthermore, Plaintiffs' Complaint has not been amended to add Rockdale Hospital, LLC as a party, and no order has been entered substituting Rockdale Hospital, LLC into the case. Accordingly, Rockdale Hospital, LLC is not a party.   In any event, Rockdale Hospital, LLC is a nominal or an improper party because of the absence of the statutory affidavit required by O.C.G.A. § 9-11-9.1.

62.   Simply put, Plaintiffs have named an incorrect party – LifePoint Hospitals, Inc. – as a defendant in this action; however, "no valid claim for relief exists" against LifePoint Hospitals, Inc.   *See Williams v. Atlantic Coast Line Railroad Co.,*   294 F. Supp. 815, 816 (S.D. Ga. 1968) (no valid claim for relief existed against the misnamed defendant who was in no way involved in negligent acts alleged by the plaintiff, as such the misnamed defendant is a nominal party); *see also* Mem. in Support of LifePoint MTD at pp. 2-3.

63.   Even assuming there is some basis for Plaintiffs' claims against the holding company Lifepoint Hospitals, Inc. – which there is not – as discussed in Section B., *supra*,[10] such claims fail for the additional reason that Plaintiffs failed to

---

[10] Plaintiffs' breach of warranty claims against LifePoint Hospitals, Inc. would further fail because no privity exists between LifePoint Hospitals, Inc. and Plaintiffs. Indeed, Plaintiffs' Complaint fails to allege any such privity, and in any event, UCC

attach a legally valid affidavit to their Complaint as required by O.C.G.A. § 9-11-9.1.[11]   Accordingly, **none** of Plaintiffs' allegations provides any reasonable basis for imposing liability against LifePoint Hospitals, Inc. and this Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to Plaintiffs.   *See Tri–Cities,* 427 F.2d 325.   While some courts couch the analysis as one contemplating "improper parties," and others couch it in terms of "nominal parties," the focus is the same: where no valid claim exists against a particular defendant, the defendant is a nominal or improperly joined party whose consent is not required for removal.[12]

---

warranty provisions do not apply to a hospital entity's providing an allegedly defective medical device.  *See McCombs v. Southern Regional Medical Center, Inc.,* 233 Ga. App. 676, 677, 504 S.E.2d 747, 749 (1998).

[11] For the same reasons, even if Rockdale Hospital, LLC is a party to this action by virtue of filing an Answer – which it is not – it is nevertheless a nominal or improperly joined defendant from whom no consent is required because there is no reasonable basis for imposing liability against it because of Plaintiffs' failure to obtain and attach a legally valid affidavit required by O.C.G.A. § 9-11-9.1.

[12] *See also Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir. 1993) (noting that while it is "unclear whether parent corporations are *per se* nominal parties", where parent company had no connection with the manufacture, sale or distribution of the defective product, had engaged in no independent alleged wrongdoing, and was joined solely because of the acts of its subsidiary, it was likely a "nominal party"; removal without parent corporation's consent not defective); *Kern v. Jeppesen Sanderson, Inc.,* 867 F. Supp. 525, 532 (S.D. Tex. 1994) (where parent corporation did not design, produce or sell the allegedly defective approach charts, parent and subsidiaries had observed corporate formalities and operated their businesses as

**D.**    **The Amount-In-Controversy Requirement is Satisfied.**

64.    The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of Plaintiffs' Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

65.    Plaintiffs allege that they are entitled to compensatory damages and to punitive damages based upon alleged injuries to Plaintiff Iris Carr "[a]s a result of having the Prolift, TVT sling, Pinnacle, and SPARC implanted in her[.]"  Compl. at ¶ 23.  Ms. Carr has allegedly experienced mental and physical pain and suffering, physical deformity, and has undergone or will undergo corrective surgery or surgeries."  *Id*.

66.    Plaintiffs further allege that:

Plaintiff Iris Carr was caused and/or in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to,

---

separate and distinct entities, and there was no evidence that activities of parent had anything to do with the events giving rise to lawsuit, parent was a nominal party who had been fraudulently joined and was to be disregarded for removal purposes); *Salkin v. United Serv. Auto. Ass'n,* 2011 WL 54079, *6 (C.D. Cal., Jan. 28, 2011) (where defendant showed that parent and subsidiary were separate entities and there was no possibility that plaintiffs could state a claim against parent based on the actions of the subsidiary, parent was fraudulently joined and removal was proper); *Stonebrae, L.P. v. Toll Bros., Inc.,* 2008 WL 2157000, *8 (N.D. Cal., May 21, 2008) (where plaintiff failed to state a claim against parent corporation based on face of the complaint, parent was fraudulently joined and removal was proper).

> obligations for medical services and expenses, present and future lost
> wages, and other damages.

*Id.* at ¶¶ 48, 52, 56, 60, 63, 67, 71, 79, and 86.

67.    Plaintiffs allege that Mr. Ronnie Carr has: "lost the society,
companionship, love, affection, aid, services, cooperation, sexual relations, and
comfort of his wife" and therefore is "entitled to damages for loss of consortium."
Compl. at ¶ 109.

68.    In this case, it is "'facially apparent' from the [complaint] itself that the
amount in controversy exceeds the jurisdictional minimum, even [though] 'the
complaint does not claim a specific amount of damages.'"  *Roe v. Michelin N. Am.,
Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II,
Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).   "Eleventh Circuit precedent permits
district courts to make 'reasonable deductions, reasonable inferences, or other
reasonable extrapolations' from the pleadings to determine whether it is facially
apparent that a case is removable."  *Id.* (quoting *Pretka*, 608 F.3d at 754).

69.    Plaintiffs' claims of "significant mental and physical pain," "permanent
and substantial physical deformity," "severe emotional distress," "corrective
surgeries," "financial and economic loss," "present and future lost wages," "loss of
consortium," "punitive damages," "attorney fees," and other allegations establish

that the amount in controversy is satisfied.  *See, e.g.,* Compl. at ¶¶ 23, 48, 52, 56, 60, 63, 67, 71, 79, 86, 109, 112, and 114.

70.   As shown below, it is facially apparent from their Complaint that Plaintiffs are seeking damages exceeding the jurisdictional amount.  Georgia juries in product liability and medical malpractice cases asserting similar claims have rendered verdicts in excess of $75,000, exclusive of interest and costs.  *See, e.g., Hartman v. Dees*, No. E-1086, 2001 Ga. Trial Rptr. LEXIS 1006 (Fulton Cty. Super. Ct., 2001) (verdict of $355,000, including $35,000 in loss of consortium damages, against OB/GYN in a medical negligence case alleging complications from gynecological surgery requiring additional surgeries to repair alleged injuries); *Carlson v. Lyons*, No. 03-VS-49310, 2009 Ga. Trial Rptr. LEXIS 931 (Fulton Cty. State Ct., 2009) (verdict of $600,000 against defendant physician in a medical negligence case in which Plaintiff was seeking both economic and non-economic damages as a result of complications of gynecologic surgery for which additional surgery and treatment were required);  *Patton v. Tackitt*, No. 2007A5914-5, 2009 Ga. Trial Rptr. LEXIS 1115 (Cobb Cty. State Ct., 2009) (verdict of $248,160 against OB/GYN for damages, lost wages, and pain and suffering resulting from gynecological surgery).

71.   Accordingly, the jurisdictional amount is satisfied in this case.

## E.    The Other Prerequisites for Removal Have Been Satisfied.

72.    In addition to satisfying the requirements of diversity jurisdiction, Defendant Ethicon, Inc. has satisfied all other requirements for removal.

73.    Removal to this Federal district court is timely.  Defendant Ethicon, Inc. has not been served with a summons and Complaint in this proceeding,[13] and therefore its 30-day removal period has not run.  28 U.S.C. § 1446(b); *Delgado v. Shell Oil Co.,* 231 F.3d 165, 177 n.23 (5th Cir. 2000)(unserved defendant in multi-defendant case has right of removal); *North v. Precision Airmotive Corp.*, 600 F. Supp. 2d 1263 (M.D. Fla. 2009); *see Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202, 1206 (11th Cir. 2008).

74.    Venue for removal is proper in this district and division under 28 U.S.C. § 81(c)(2) because this district and division embrace the State Court of Fulton County, Georgia, the forum in which the removed action was pending.

75.    In accordance with 28 U.S.C. § 1446(d), Defendant Ethicon, Inc. will promptly provide written notice of the filing of this Notice of Removal to Plaintiffs and shall file a copy of this Notice along with a Notice of Filing of Notice of Removal with the Clerk of the State Court of Fulton County, Georgia, where this action is currently pending (attached hereto as "Exhibit E").

---

[13] *See* Marshal's Entry of [Lack of] Service (April 22, 2011), attached hereto as "Exhibit D."

76.   Defendants AMS and Boston Scientific, the only properly joined and served out-of-state defendants, also consent to the removal of this action to this Court. *See* Exhibits F and G, attached hereto.

**WHEREFORE**, Defendant Ethicon, Inc. gives notice that the matter bearing civil action number 11EV012382B in the State Court of Fulton County, Georgia is removed to the United States District Court for the Northern District of Georgia, Atlanta Division and request that this Court retain jurisdiction for all further proceedings in this matter.

Respectfully submitted, this 6th day of July, 2011.

/s/ N. Karen Deming
N. KAREN DEMING
Georgia Bar No. 217581
S. ERIC RUMANEK
Georgia Bar No. 558047
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216
Telephone:   (404) 885-3000
Facsimile:   (404) 885-3900

*Counsel for Ethicon, Inc.*

-38-

## **Font Certification**

Pursuant to Local Rule 7.1 D, I hereby certify that the foregoing document was prepared using Times New Roman 14 point type as provided in Local Rule 5.1B.

/s/ *S. Eric Rumanek*
S. ERIC RUMANEK
Georgia Bar No. 558047

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties to this proceeding by mailing a copy of the same by First Class United States mail, properly addressed and postage prepaid:

Mark R. Mueller, Esq.
404 West 7th Street
Austin, Texas 78701
*Counsel for Plaintiffs*

Lori G. Cohen
R. Scott Campbell
GREENBERG TRAURIG, LLP
The Forum
3290 Northside Parkway
Suite 400
Atlanta, GA  30327

Jonathan T. Krawcheck
Brannon J. Arnold
WEINBERG WHEELER HUDGINS GUNN &
DIAL
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
*Counsel for Boston Scientific, LLC*

Lisa York Bowman
GIDEON COOPER & ESSARY, PLC
400 Perimeter Center Terrace, Suite 900
Atlanta GA  30346
*Counsel for Lifepoint Hospitals, Inc. and*
*Lifepoint Hospitals, Inc. d/b/a Rockdale*
*Medical Center*

Hunter S. Allen, Jr.
ALLEN MCCAIN & O'MAHONY PC
Two Midtown Plaza
Suite 1700
1349 W. Peachtree St., N.W.
Atlanta, GA  30309
*Counsel for Georgia Urology, P.A. and*
*Allen Ashley Futral, III, M.D.*

Stephanie H. Gordon, M.D.
2570 Owens Drive
Suite A
Conyers, GA  30094
*No Counsel of Record*

The Women's Center, P.A.
2570 Owens Drive
Suite A
Conyers, GA  30094
*No Counsel of Record*

This 6th day of July, 2011.

/s/ *S. Eric Rumanek*
S. ERIC RUMANEK
Georgia Bar No. 558047