IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IRIS GERALDINE CARR, et al.,

    Plaintiffs,

      v.

ETHICON, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:11-CV-2217-TWT

## ORDER

This is a medical malpractice and products liability action.  It is before the
Court on Boston Scientific's Motion to Dismiss [Doc. 6], Allen Futral's Motion to
Dismiss [Doc. 7], Georgia Urology, P.A.'s Motion to Dismiss [Doc. 8], Lifepoint
Hospitals, Inc. and Lifepoint Hospitals, Inc. d/b/a Rockdale Medical Center's Motion
to Dismiss [Doc. 9], and the Plaintiffs' Motion to Dismiss [Doc. 20].  For the reasons
set forth below, the Court DENIES Boston Scientific's Motion to Dismiss [Doc. 6]
and GRANTS Allen Futral's Motion to Dismiss [Doc. 7], Georgia Urology, P.A.'s
Motion to Dismiss [Doc. 8], Lifepoint Hospitals, Inc. and Lifepoint Hospitals, Inc.
d/b/a Rockdale Medical Center's Motion to Dismiss [Doc. 9], and the Plaintiffs'
Motion to Dismiss [Doc. 20].

I.  <u>Background</u>

On September 17, 2008, Iris Carr ("Carr") underwent a surgical procedure to repair a grade 3 cystocele and stress urinary incontinence.  During the procedure, Dr. Stephanie Gordon implanted a Pinnacle Pelvic Floor Repair Kit (the "Pinnacle Device") and a TVT sling.  The Pinnacle Device and TVT sling are commonly referred to as "vaginal mesh."  The procedure took place at Rockdale Medical Center in Conyers, Georgia.  Defendant Boston Scientific, Inc. ("Boston Scientific") manufactured the Pinnacle Device.  Defendant Ethicon, Inc. ("Ethicon") manufactured the TVT sling.  After the procedure, Carr suffered "worsening of her incontinence, abdominal pain, and symptoms of interstitial cystitis."  (Compl., Ex. A1; Doc. 1-1.)

On December 15, 2008, Carr underwent another surgery during which Dr. Gordon trimmed portions of the mesh that had protruded through Carr's vagina.  On April 13, 2009, Carr underwent a third surgery for stress urinary incontinence, grade 3 rectocele, and vaginal mesh erosion.  During that procedure, Dr. Allen Futral implanted a Prolift device and a SPARC device.  Ethicon manufactured the Prolift device.  American Medical Systems ("AMS") manufactured the SPARC device.

On April 12, 2011, Iris Carr and her husband, Ronnie Carr, filed this Complaint against Dr. Stephanie Gordon, the Women's Center, P.A., Dr. Allen Futral, Georgia

Urology, P.A., Lifepoint Hospitals, Inc. ("Lifepoint"), Lifepoint Hospitals, Inc., d/b/a Rockdale Medical Center ("Rockdale"), AMS, Boston Scientific, Ethicon, and unknown John Does [Doc. 1].  The Plaintiffs assert claims for medical malpractice, products liability, breach of warranty, loss of consortium, punitive damages, and attorneys fees [See id.].  On July 6, 2011, the Defendants removed the action to this Court [Doc. 1].  The Plaintiffs allege that as a result of the Pinnacle Device, TVT sling, Prolift device, and SPARC device, she has suffered severe mental and physical injuries.  Carr contends that her injuries will require multiple corrective surgeries. Boston Scientific, Dr. Allen Futral, Georgia Urology, Lifepoint, and Rockdale have filed motions to dismiss [Docs. 6, 7, 8, & 9].  The Defendants argue that the statute of limitations bars the Plaintiffs' claims.  The Plaintiffs have also filed a Motion to Dismiss Dr. Stephanie Gordon, The Women's Center, Dr. Allen Futral, Georgia Urology, Lifepoint, and Rockdale [Doc. 20].  The Plaintiffs seek to pursue their claims only against Ethicon, Boston Scientific, and AMS.

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a

plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

## III.  Discussion

### A.    Plaintiffs' Motion to Dismiss

The Plaintiffs have moved to dismiss Dr. Stephanie Gordon, The Women's Center, Dr. Allen Futral, Georgia Urology, Lifepoint, and Rockdale [See Doc. 20]. The Defendants have filed no counterclaims and produced no discovery. Further, Dr. Futral, Georgia Urology, Lifepoint, and Rockdale have also moved to dismiss the claims against them [Docs. 7, 8, & 9]. For these reasons, the Plaintiffs' Motion to Dismiss is granted. Dr. Futral's Motion to Dismiss [Doc. 7], Georgia Urology's

Motion to Dismiss [Doc. 8], and Lifepoint and Rockdale's Motion to Dismiss [Doc. 9] are also granted.

B.     Boston Scientific's Motion to Dismiss

Boston Scientific argues that the Plaintiffs' claims are barred by the statute of limitations.  In Georgia, personal injury actions must be brought within two years of the date the cause of action "accrues."  O.C.G.A. § 9-3-33.  Dr. Gordon implanted the Pinnacle Device on September 17, 2008.  Immediately following this procedure, Carr "noted worsening of her incontinence, abdominal pain, and symptoms of interstitial cystitis."  (Compl., Ex. A1; Doc. 1-1.)  Indeed, on December 15, 2008, Dr. Gordon performed another procedure to trim portions of the Pinnacle Device that had begun to protrude from Carr's vagina.  Carr filed this lawsuit on April 12, 2011, more than two years after she suffered an injury allegedly caused by the Pinnace Device.

The Plaintiffs, however, argue that the Complaint is timely under Georgia's "discovery rule."  Under the discovery rule, "[a] cause of action will not accrue . . . until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that the injury may have been *caused* by the defendant's conduct."  King v. Seitzingers, Inc., 160 Ga. App. 318, 319 (1981) (quoting Raymond v. Eli Lilly & Co., 371 A.2d 170 (N.H. 1977)) (emphasis added).  The discovery rule, however, applies only in cases of a continuing tort.

McAuley v. Wills, 251 Ga. 3 (1983); M.H.D. v. Westminster Schools, 172 F.3d 797, 804-805 (1999) ("[I]n Georgia the discovery rule only applies to cases involving 'continuing torts,' where the plaintiff's injury developed from prolonged exposure to the defendant's tortious conduct."). Continuing torts are those that result from exposure to the defendant's continuous tortious conduct and "produce[ ] injury in varying degrees over a period of time." Everhart v. Rich's, Inc., 229 Ga. 798, 802 (1972).

In In re Mentor Corp. ObTape Transobturator Sling Products Liability Litigation, 711 F. Supp. 2d 1348 (M.D. Ga. 2010), the plaintiffs brought products liability claims against the seller of a suburethral sling implant. After the initial surgery, the plaintiffs suffered vaginal discharge and other injuries. The defendant, however, argued that Georgia's two year statute of limitations barred the plaintiffs' claims. Applying Georgia's discovery rule, the court found that although the plaintiffs manifested injuries more than two years before filing suit, they were unaware that a defect in the suburethral sling caused those injuries. Thus, the discovery rule tolled the statute of limitations until the plaintiffs reasonably should have determined that the sling implant was defective. In one instance, the court reasoned that "[the plaintiff's] doctor never told her there was a defect in the [sling implant]; when he told her that the tape had eroded in February 2005, he explained that it was possible that

her body was rejecting the sling or that trauma from intercourse could have thinned her tissue." Id. at 1380. Thus, the court held that "a reasonable fact finder could conclude that [the plaintiff] did not suspect that [the sling] might be defective until . . . [the plaintiff's doctor's] physician assistant told [the plaintiff] that there was a problem with the sling." Id.

Here, as in In re Mentor, the Plaintiffs were aware of Carr's injury more than two years before filing suit. Also like In re Mentor, however, the Plaintiffs did not suspect that the Pinnacle Device was defective until after Carr's initial injuries occurred. Neither Dr. Gordon nor Dr. Futral indicated that the Pinnacle Device was defective, or that it might have caused Carr's injuries. See id. (finding that Georgia's discovery rule tolled statute of limitations where "[plaintiff's] doctor never told her that the [defendant's product] might be defective.").

Boston Scientific, however, argues that the discovery rule should not apply to products liability claims arising from defective medical implants. To support this contention, the Defendant cites Ganousis v. E.I. du Pont de Nemours & Co., 803 F. Supp. 149 (N.D. Ill. 1992). In contrast to In re Mentor, the Ganousis court found that defective medical implants did not inflict a continuing injury and thus did not implicate the discovery rule. The court distinguished cases involving prolonged exposure to dangerous chemicals. First, unlike In re Mentor, Ganousis applied Illinois

law, not Georgia law.  Further, while the Pinnacle Device remained in Carr's body, she suffered prolonged and constant exposure to the Defendant's allegedly defective product.  See Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992) (applying discovery rule to claim of prolonged asbestos exposure); King, 160 Ga. App. 318 (exposure to lead fumes over the course of five years).  Indeed, Carr suffered from continuing exposure to the Defendant's product just as asbestos victims suffer continued exposure to toxic substances.  See Welch, 951 F.2d at 1237.  Thus, as in In re Mentor, the discovery rule applies to the Plaintiffs' claims.

Accepting the facts in the Complaint as true, Carr was not aware that the Pinnacle Device *caused* her injuries until less than two years before filing this action. See In re Mentor, 711 F. Supp. 2d at 1380 (declining to dismiss action where there was evidence that plaintiffs did not suspect defendant's product was defective until less than two years prior to filing action).  As discussed above, Carr's doctors never advised her that the Pinnacle Device caused her injuries.  Indeed, Carr underwent another surgery to implant additional vaginal mesh on April 13, 2009, less than two years before filing this Complaint.  During that surgery, Dr. Futral did not remove the Pinnacle Device, nor did he advise the Plaintiffs that the Pinnacle Device was defective. See id. (applying discovery rule to toll statute of limitations where plaintiffs realized they were injured, but were not advised by doctors that defendant's products

caused those injuries); <u>Andel v. Getz Servs., Inc.</u>, 197 Ga. App. 653, 654 (1990).

("[W]hether [the plaintiff] should, through the exercise of reasonable diligence, have

discovered the causal connection between his illnesses and the alleged negligence of

defendant is an issue for jury determination.").   For these reasons, the Plaintiffs'

Complaint was timely filed.

## IV.  <u>Conclusion</u>

For the reasons set forth above, the Court DENIES Boston Scientific's Motion

to Dismiss [Doc. 6] and GRANTS Allen Futral's Motion to Dismiss [Doc. 7], Georgia

Urology, P.A.'s Motion to Dismiss [Doc. 8], Lifepoint Hospitals, Inc. and Lifepoint

Hospitals, Inc. d/b/a Rockdale Medical Center's Motion to Dismiss [Doc. 9], and the

Plaintiffs' Motion to Dismiss [Doc. 20].

SO ORDERED, this 20 day of September, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge